**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **MARTIN J. WALSH,** | ) | |
| **Secretary of Labor, United States** | ) | |
| **Department of Labor,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 1:21-00375-KD-B** |
| | ) | |
| **ALLIANCE MECHANICAL SOLUTIONS** | ) | |
| **LLC,** | ) | |
| **Defendant.** | ) | |

**ORDER**

This action is before the Court Defendant's Motions for partial Summary Judgment as to

Kevin Albritton (Doc. 19) and Felix Lenza (Doc. 20), Plaintiff's Response (Doc. 25), and

Defendant's Reply (Doc. 30), Plaintiff's Supplement (Doc. 42), and Defendant's Reply (Doc. 45).[1]

For reasons stated herein, the motions are GRANTED.

## I.    <u>Findings of Fact</u>[2]

From December 17, 2017 to December 29, 2019, Plaintiff, the United States Department

of Labor (DOL) via the Wage and Hour Division (WHD) investigated Defendant Alliance

Mechanical Solutions, LLC (AMS)[3] to determine whether it was covered by, and complying with,

---

[1] Defendant's Motion to Strike the Declaration of Assistant District Director Patricia Chambers (Doc. 31) was granted (Doc. 39) and thus, that Declaration (Doc. 25-1 (Decltn. Chambers) has not been considered.  Additionally, the Court has considered the DOL's responses to the Court's interrogatories and AMS' Verified Summary (Docs. 9, 13) as referenced by the parties in support of their respective positions.

[2] The facts are taken in the light most favorable to the non-movant.  <u>Tipton v. Bergrohr GMBH–Siegen</u>, 965 F.2d 994, 998-999 (11th Cir. 1992).  The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case."  <u>Priester v. City of Riviera Beach</u>, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

[3] AMS is a welding and pipefitting company in Baldwin County, Alabama, an employer subject to the FLSA, and an enterprise under § 3(r) of the Act, 29 U.S.C. § 203(r) with an annual gross volume of sales made or business done of no less than $500,000 within the meaning of § 3(s)(1)(A) of the Act, 29 (Continued)

the *Fair Labor Standards Act of 1938* (FLSA), as amended, 29 U.S.C. § 201, *et seq*. (Doc. 42-4 at 2 (Decltn. Monetta Roberts (Roberts) (Former DOL WHD Investigator) (Roberts)); Doc. 9 at 1 (DOL Interrog, Resp. #1)).   DOL Investigator Roberts concluded that AMS employees were not paid the full overtime premium to which they were entitled under the FLSA because AMS engaged in a widespread and regular practice of: 1) misclassifying a portion of employee's regular wages as per diem to reduce the regular rate upon which employees' overtime premium is based, even when the employees had not traveled outside of the community area for work and had not incurred expenses in relation to the per diem they received;[4] and 2) even if the per diem that the employees received was properly excluded from the regular rate of pay, AMS failed to properly calculate and pay those employees an overtime premium equivalent to one-and-one-half times the regular pay rate, instead paying them a smaller overtime premium.  (Doc. 42-4 at 2 (Decltn. Roberts); Doc. 9 at 3; Doc. 42 at 7).  From this, the DOL asserts that 115 AMS employees are due $62,213.35 in overtime back wages as a result of violations of Section 7 of the FLSA during the investigative period.  (Doc. 9 at 2-3 (DOL Interrog, Resp. ##3, 5, 7); Doc. 42 at 7).

On August 25, 2021, the Secretary of Labor, U.S. Department of Labor, Martin J. Walsh initiated this action on behalf of the DOL to enjoin AMS from violating Sections 6, 7, 11(c), 15(a)(2) and 15(a)(5) of the FLSA 29 U.S.C. § 201, *et seq*.; and, pursuant to Section 16(c) of the Act, 29 U.S.C. § 216(c), to recover unpaid overtime wages and an equal amount as liquidated

---

U.S.C. § 203(s)(1)(A). (Doc. 38 at 2-3; Doc. 9 at 2).  Brian Weil is AMS' Owner and April Vasko-Norton is AMS' Vice-President and Controller.  (Doc. 9 at 2).  AMS provides pipe and structural fabrication and installation services to marine and industrial sites as well as construction services in several states. Kevin Albritton (Albritton) and Felix Lenza (Lenza) are/were AMS employees.

[4] The DOL describes this as a  "scheme to misclassify part of employees' regular wages as per diem in a way that lowers the regular rate upon which the employees' overtime premium is based constitutes an 'unrealistic and artificial' computation that negates the FLSA's statutory purpose."  (Doc. 42 at 6).

damages.[5] (Doc. 1, Doc. 1-2 "Appendix A"), Doc. 38 (amended)). The DOL also seeks an injunction permanently enjoining AMS from violating the FLSA. (Id.; Doc. 9 at 3). In the Amended Complaint, the DOL alleges that since December 31, 2017, AMS has violated 1) Sections 6, 7 and 15(a)(2), 29 U.S.C. §§ 207 and 215(a)(2) of the FLSA -- by employing persons in an enterprise engaged in commerce or in the production of goods for commerce, for workweeks longer than 40 hours without compensating them for employment in excess of such hours at rates not less than one-and-one-half times the regular rates at which they were employed; and 2) Sections 11(c) and 15(a)(5), 29 U.S.C. §§ 211(c) and 215(a)(5), and 29 C.F.R. § 516 by failing to make, keep and preserve adequate and accurate records of the persons employed and of the wages, hours and other conditions and practices of employment maintained by them.  (Doc. 38).

On October 26, 2021 the Court issued an FLSA Preliminary Scheduling Order (as amended) which set November 16, 2021 for the DOL to respond to the Court's Interrogatories[6] (Doc. 7 at 5-8) and December 9, 2021 for AMS to file a Verified Summary of all hours worked by its employees during each relevant pay period, the rate of pay and wages paid, including overtime pay if any (including all time sheets and payroll records that support or relate to the time periods in the Summary) (Doc. 7; Doc. 12 (amended)).  On November 9, 2021, the DOL filed its response

---

[5] Section 6 requires employers pay a minimum hourly wage, 29 U.S.C. § 206; Section 7 requires that an employee who works for more than 40 hours a week is entitled to overtime compensation equal to one and a half times his regular rate of pay, 29 U.S.C. §§ 206, 207; Sections 11(c) and 15(a)(5) require employers keep accurate and complete payroll and timekeeping records, 29 U.S.C. §§ 211(c) and 215(a)(5); Section 16(c) provides that an employer who violates these provisions is liable for back wages plus an equal amount of liquidated damages, 29 U.S.C. §§ 215-216; and Section 17 authorizes prospective and restitutionary injunctions. 29 U.S.C. § 217.

[6] "The FLSA Scheduling Order directs a number of interrogatories to each plaintiff. The interrogatories query each plaintiff's work history with the company, pay rates, and position. After entry of the Court's standard FLSA scheduling order, however, the parties proposed a different order with discovery requirements directed to Defendant and more narrowly tailored to Plaintiffs' claims." Hornady v. Outokumpu Stainless USA, 572 F.Supp.3d 1162, 1190 (S.D. Ala. Nov. 18, 2021).

to the Court's Interrogatories (Doc. 9), and on December 9, 2021, AMS filed the Verified Summary (Doc. 13) as well as Notice of Service on the DOL of "a copy of all timesheets and payroll records for each Plaintiff that relate to the time periods identified in Defendant's Verified Summary of Plaintiffs' Hours Worked, Rate of Pay, and Wages Paid[]" (Doc. 14).[7] On February 21, 2022, AMS moved for partial summary judgment regarding employees Kevin Albritton (Albritton) and Felix Lenza (Lenza). (Docs. 19, 20). On March 14, 2022, the Rule 16(b) Scheduling Order issued (as amended), setting the close of discovery as September 2, 2022 and the dispositive motion deadline as September 30, 2022.  (Docs. 26, 27 (amended)). On May 9, 2022, AMS produced its responses to the DOL's interrogatories, requests for production, and requests for admission.  (Doc. 35).  The Court ordered the DOL to supplement its opposition to AMS' motions for summary judgment, which it did by July 6, 2022.  (Doc. 40). On July 22, 2022, AMS produced supplemental responses to the DOL's interrogatories and requests for production, which were made available for inspection and copying to the DOL.  (Doc. 44; Doc. 45 at 7 at note 1).

## II.   **Prematurity**

In its opposition to AMS' motions for partial summary judgment, the DOL argues that the motions are premature:

> Defendant, in its Motions, now raises two employees it claims were not improperly paid per diem or an incorrect overtime premium. Defendant has not provided sufficient documentation to support their claim, including its refusal to provide relevant documents during Wage and Hour's investigation. However, the very existence of Defendant's systematic miscalculation of employees' overtime premiums – which Wage and Hour was able to detect from even the limited and incomplete records Defendant did provide – creates a genuine issue of material fact as to these employees ....

(Doc. 25 at 5).  Similarly, the DOL argues as follows in its Supplement:

---

[7] Verified (sworn to) by AMS' Brian Weil, and setting out "the hours worked by each employee, the rate of pay, wages paid including overtime pay, for each employee[.]"  (Doc. 13 at 1).

Plaintiff had no opportunity to conduct discovery on the facts or issues raised in either motion prior to Defendant's filing of those motions ... Plaintiff could not have done so, as the discovery period had not yet opened in this matter at the time of filing. Nor has Plaintiff had the opportunity to cure this deficiency to date, as Defendant's dilatory conduct that began in Plaintiff's investigation has thus far continued throughout this litigation.

\*\*\*

Defendant ignored this Court's order to provide information for "each relevant pay period," instead choosing to pursue its dilatory practices by providing only the same documents it had already provided during the Secretary's investigation.

... Plaintiff has sought to expeditiously obtain Defendant's missing records through written discovery....Defendant has... [created delay] ... by providing shifting positions as to when and how it will provide the responsive documents ...

\*\*\*

... Defendant's premature motions are a continuation of Defendant's longstanding efforts, beginning in Plaintiff's investigation and continuing throughout this litigation, to frustrate and manipulate this case ...  Defendant's refusal or inability to fully cooperate with Plaintiff's investigation or this lawsuit has created a gap in the information available to Plaintiff. Defendant now seeks ... to prematurely eliminate two employees from this action on the grounds that Plaintiff cannot identify specific evidence to establish that those two employees were harmed – even though the reason ... is because Defendants have failed to produce the relevant documents necessary for Plaintiff to make such a showing.

(Doc. 42 at 3-5).  In response, AMS disputes the DOL's characterizations -- as to its motions being premature due to a lack of discovery as well as regarding its conduct.  (Doc. 45).

<u>First</u>, the DOL argues that AMS' December 9, 2021 production was deficient and violates the FLSA Scheduling Order because it only "provided records only through December of 2019 ... stopping well short of the full scope of time covered by this lawsuit."  (Doc. 42 at 4). Even *if* AMS' December 9, 2021 production was deficient by failing to produce the records for <u>all</u> relevant pay periods alleged in the Complaint, this is irrelevant for purposes of AMS' motions as to Albritton and Lenza. The relevant workweeks are August 18, 2019 for Albritton, and September 30, 2018 and October 7, 2018 for Lenza -- periods admittedly *included* within AMS' production as described by the DOL (*i.e.*, through December 2019). As such, the DOL cannot rely on the foregoing to argue prematurity *as to Albritton and Lenza*.  Likewise, the DOL cannot rely on any other alleged

conduct by AMS (dilatory, manipulation, manner of production inspection/copying, installments, longstanding efforts to frustrate, etc. (Doc. 42 at 4-6)) *as to Albritton and Lenza* because the documentation "gap" alleged does not appear to exist *as to those employees* or the related motions for summary judgment. Additionally, the documents that AMS produced confirms there is no need on summary judgment for the use of "estimations" *as to Albritton and Lenza*, or for any "inference" to be given to such or extended *to those employees*. (Doc. 42 at 9).

Second, as noted *supra*, on November 9, 2021 the DOL responded to the Court's Interrogatories and produced documents. (Doc. 9). This production included the DOL WHD Investigator Roberts' **Summary of Unpaid Wages Form WH-56**[8] **(WH-56)** and **Wage Transcription and Computation Sheet Form WH-55**[9] **(WH-55)** for AMS employees (including Albritton and Lenza) -- forms that are generally prepared after a DOL WHD Investigator reviews an employer's records for each employee (*e.g.*, timesheets, payroll, etc.) and makes findings as to the wages due to those employees.  (Doc. 9-1 at 1, 10 (WH-56); Doc. 9-2 at 2, 56 (WH-55); Doc. 42-3). Per the DOL, the DOL WHD investigation of AMS resulted in specific findings contained in the WH-56 and WH-55, including wage findings for Albritton and Lenza. Such would have necessarily entailed the DOL Investigator having to review *those* employees' records (timesheets, payroll, etc.) (*i.e.*, the very documentation the DOL argues it lacks and which has not been provided by AMS) to arrive at the wages due. Or, if the DOL did not review those specific

---

[8] Called a WH-56, this is a post-audit/investigation summary prepared by the DOL WHD Investigator, listing employees the investigator has determined are due back wages, the period for which back wages are due, and the amount of gross back wages.  "The document's purpose is to summarize the findings of the totality of the investigation." Wages & Hours P 31625 (C.C.H.), 2017 WL 9324507, 16-18 CCH-WH ¶31, 625 *Matter of Whiting-Turner* (Oct. 19, 2017).

[9] Called a WH-55, this form reflects the WHD Investigator's individual calculations for the unpaid back wages due to each employee (versus the WH-56 summary of unpaid back wages). SCHNEIDER & STINE, 2 WAGE AND HOUR LAW § 19:14 (Apr. 2022 Update).

employee's records as part of the investigation yet still made findings as to wages due to them (which the DOL suggests on summary judgment by stating AMS "refus[ed] to provide relevant documents during the Wage and Hour's investigation[]" (Doc. 25 at 5) then the result is that the DOL's WH-56 and WH-55 wage findings are unsupported and based on conjecture (potentially just the WHD DOL Investigator's estimations).

Additionally, the DOL argues that AMS "unlike Plaintiff, is in a position to provide specific evidence in support of its positions in its Motions. Yet, it has not done so. It has not, for instance, provided any payroll records for either employee named in its Motions."  (Doc. 25 at 6).  From this, the DOL argues that its wage estimations for AMS employees as a whole, are proper to apply to for Albritton and Lenza on summary judgment, as all justifiable inferences must be drawn in its favor as the non-movant.  (Id.)  In otherwords, the DOL asserts that because its findings show that AMS systematically miscalculated employee overtime premiums, it must have necessarily done so as to Albritton and Lenza.  (Id. at 5).  The Court cannot agree. The DOL makes this assertion without submitting supporting evidence to create a genuine issue of material fact as to these specific employees, and, despite the presence of records for Albritton and Lenza on summary judgment.  Notably, AMS contends -- repeatedly -- that it produced the requested payroll records and timesheets to substantiate the relevant pay periods, and that those documents were electronically transferred to the DOL on December 9, 2021 and filed: "it has served a copy of all timesheets and payroll records for each Plaintiff that relate to the time periods identified in Defendant's Verified Summary of Plaintiffs' Hours Worked, Rate of Pay, and Wages Paid." (Doc. 13; Doc. 14; Doc. 45-1).  AMS also supplemented its production to the DOL on July 22, 2022. (Doc. 45 at 7 at note 1).  At the least, the Verified Summary, and the Notice, support AMS' contention as to records produced for employees Albritton and Lenza.

Further, the DOL conducted a two (2) year extensive investigation of AMS for FLSA violations, during which AMS produced "copious amounts of information," and since this lawsuit was filed, has also produced "approximately 3,096 pages of physical timesheets and numerous pages of spreadsheets containing payroll records for 115 different employees for Plaintiff's requested time period of 72 weeks."  (Doc. 30 at 6; Doc. 45 at 4).  And apparently the DOL investigation was so in-depth, that according to the DOL, the WHD Investigator Roberts concluded that AMS had a regular "scheme" of violating the FLSA resulting in $62,213.35 in overtime back wages being due to its employees. If the DOL had evidence of AMS' FLSA violations as to Albritton and Lenza, such should have been submitted in opposition to summary judgment. Or, with the DOL's July 6, 2022 Supplement (due two (2) months *after* AMS produced its responses to the DOL's interrogatories, requests for production, and requests for admission on May 9, 2022. (Doc. 35)). Instead, as to Albritton and Lenza, other than the WH-55 and WH-56 forms, there is no evidence before the Court to support the DOL's position and the DOL has not even addressed much less explained the differences between the wage findings for those employees on the DOL forms versus the wage amounts in AMS' Verified Summary (unless the DOL's wage findings are not actual, but rather only "estimations").

Third, Rule 56(b)[10] of the Federal Rules of Civil Procedure specifies that "a party may file a motion for summary judgment at any time until 30 days after the close of all discovery."  "In fact, the Eleventh Circuit has counseled that 'we expect that district judges will be open'" to Rule 56 motions filed 'at an early stage of the litigation if the moving party clearly apprises the court that a prompt decision will likely avoid significant unnecessary discovery.' *Cordoba v. Dillard's,*

---

[10] As stated in the Adv. Cmtte. Notes to the 2009 Amendment to Rule 56(b): "The new rule allows a party to move for summary judgment at any time, even as early as the commencement of the action."

*Inc.,* 419 F.3d 1169, 1188 (11th Cir.2005); *see also Reflectone, Inc. v. Farrand Optical Co.,* 862 F.2d 841, 843–44 (11th Cir.1989) (declining to adopt *per se* rule prohibiting entry of summary judgment before discovery)." Church v. Accretive Health, Inc., 2014 WL 7184340, *13 (S.D. Ala. Dec. 16, 2014). That said, "[s]ummary judgment is premature when a party is not provided a reasonable opportunity to discover information essential to his opposition." Smith v. Florida Dept. of Corr., 713 F.3d 1059, 1064 (11th Cir. 2013). In otherwords, the case should have proceeded enough so that additional discovery would not change the outcome. Still, however, per Rule 56(d), the nonmovant party alleging prematurity "'may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts,' but rather he must specifically demonstrate 'how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.'" Wallace v. Brownell Pontiac-GMC Co., 703 F.2d 525, 527 (11th Cir. 1983). "The burden for showing entitlement to relief under Rule 56(d) rests with" the DOL. Church, 2014 WL 7184340 at *13.

As to Albritton and Lenza, the DOL has had such a reasonable opportunity and has not met its Rule 56(d) burden. Specifically, the DOL investigated AMS over two (2) years, apparently obtaining enough employee pay information regarding Albritton and Lenza for WHD Investigator Roberts to render FLSA findings and complete WH-55 and WH-56 forms. Additionally, the parties completed limited discovery pursuant to the Court's FSLA Scheduling Order in early December 2021, more than two (2) months before AMS filed the motions. Through that process, AMS filed and produced an FLSA Verified Summary (as well produced the supporting payroll/timesheets for Albritton and Lenza to the DOL) and the DOL filed its responses to the Court's Interrogatories. "The purpose behind the FLSA scheduling order is to facilitate the expeditious and cost-effective resolution of FLSA unpaid wages claims. The parties are required to exchange documents and the

plaintiff is required to answer court interrogatories, specifically tailored to claims for unpaid wages." Ford v. Property Preservation Experts, Inc., 2012 WL 13140716, *1 (M.D. Fla. May 29, 2012). The FLSA Scheduling Order is a tool "to avoid th[e] situation where the parties waste time, money, and judicial resources litigating a loser. Neither party explains why they allowed this case to continue for so long after having the documents showing the overtime claim was doomed to fail." Auclair v. Bonita Springs Lodge #2753 Benevolent and Protective Order of Elks of the U.S.A., Inc., 2020 WL 3205950, *2 (M.D. Fla. Jun. 15, 2020). Moreover, the DOL fails to set forth the facts or information it believes it will obtain *regarding Albritton and Lenza* in further discovery, and disregards what has been exchanged to date *as to those employees*. The DOL fails to even assert what information is missing *concerning those employees*, to be able to fully respond on summary judgment review. Further, the DOL was given the opportunity to supplement its opposition to AMS' motions two (2) months *after* AMS also produced its responses to the DOL's interrogatories, requests for production, and requests for admission. (Doc. 35). Yet, the DOL submitted no evidence establishing that genuine issues of material fact exist as to Albritton and Lenza. Upon consideration, AMS' partial motions as to Albritton and Lenza are not premature.

**III.**     **Conclusions of Law**

**A.**     **Standard of Review**

Pursuant to the standard of review, "[]the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Rule 56(c) provides as follows:

*(c) Procedures*
*(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

**(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

**(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

*(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

*(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

*(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c).

The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "For factual issues to be considered genuine, they must have a real basis in the record." Mize v. Jefferson City Bd. of Ed., 93 F.3d 739, 742 (11th Cir. 1996). The nonmovant "must show specific facts to support that there is a genuine dispute." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nomovant may not rely on the pleadings, but must demonstrate a genuine issue for trial through affidavits, depositions, interrogatory answers, and admissions. Celotex, 477 U.S. 323-24. If the nonmovant fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Id. at 323.  Regarding this burden, "the court must stop short of weighing

the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence

of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."

Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11ᵗʰ Cir. 1992).

**B.    Discussion**

"Congress enacted the FLSA to guarantee regular or overtime compensation for all actual

work or employment. *Dade County, Fla. v. Alvarez, 124 F.3d 1380, 1384 (11th Cir. 1997).*"  White

v. Dixie, 741 Fed. Appx. 649, 661 (11th Cir. 2018).  There is no dispute that AMS is an employer

and Albritton and Lenza are employees under the FLSA. On summary judgment, the DOL argues

that genuine issues of material fact exist as to whether AMS violated the FLSA with regard to per

diem (Albritton and Lenza), overtime (Albritton), and a bonus (Albritton).

As the Eleventh Circuit summarized in Santiago v. Sanders, 2017 WL 11684722, *3 (11th

Cir. 2017) (citations omitted):

> ... the employee-plaintiff must shoulder the burden of proving that he did not
> receive proper compensation for work that he performed ... To make a prima facie
> showing, a plaintiff must demonstrate that (1) he was employed by the defendant;
> (2) the defendant was engaged in interstate commerce; (3) he worked more than 40
> hours in a week; and (4) the defendant knew of the plaintiff's work and failed to
> pay him overtime wages for such hours. ...

Section 206(a)(1)(C) of the FLSA requires that employers pay their employees a minimum wage

-- at least $7.25 hour (minimum wage) at present.  Section 207(a)(1) of the FLSA prohibits

employers from having employees work more than 40 hours/workweek "unless such employee

receives compensation for his employment in excess of the hours above specified at a rate not less

than one and one-half times the regular rate at which he is employed[]" (overtime). "An employee's

regular rate is 'the hourly rate actually paid the employee for the normal, non-overtime workweek

for which he is employed.'" Boyle v. City of Pell City, 866 F.3d 1280, 1286 (11th Cir. 2017).

Section 207(e) provides that the "regular rate" of an employee is "deemed to include all

remuneration for employment paid to, or on behalf of, the employee[]" subject to eight (8) types of excludable payments per Section 207(e)(1)-(8).

These excludable payments include per diem and discretionary bonuses. 29 U.S.C. §§ 207(e)(2)-(3). Section 207(e)(2) addresses per diem and provides, in relevant part, that an employee's regular rate does not include per diem: "reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment[.]" "Although per diem can be excluded from an employee's regular rate ... the 'regular rate' of pay ... cannot be left to a declaration by the parties as to what is to be treated as the regular rate for an employee; it must be drawn from what happens under the employment contract.'" 29 C.F.R. § 778.108 (citing *Bay Ridge Operating Co.,* 334 U.S. at 465...)." Gagnon v. United Technisource, Inc., 607 F.3d 1036, 1041 (5th Cir. 2010).

Section 207(e)(3) addresses bonuses and provides, in relevant part, that a payment is not part of an employee's regular rate if "both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly[.]" For a bonus to be discretionary, "the employer must retain discretion both as to the fact of payment and as to the amount until a time quite close to the end of the period for which the bonus is paid." 29 C.F.R. § 778.211(b). However, "[i]f the employer promises in advance to pay a bonus, he has abandoned his discretion with regard to it." 29 C.F.R. § 778.211(b). Paying an employee a bonus constitutes renumeration under the FLSA and must be included in calculating an employee's regular rate of pay.  29 C.F.R. 778.209(a). Once the regular rate of pay has been revised to include the bonus, any overtime pay must be recalculated at the revised regular

rate. 29 C.F.R. § 778.209(a). "Paying an employee a bonus, on top of the fixed weekly salary, doesn't preclude an employer from using the fluctuating workweek method to calculate the employee's overtime pay." Hernandez v. Plastipak Packaging, Inc., 15 F.4th 1321, 1329 (11th Cir. 2021).  As the Eleventh Circuit explained:

> ... section 778.114 ... requires that the employee receive a "fixed salary" as compensation for "whatever hours he is called upon to work in a workweek, whether few or many," and overtime pay "for all overtime hours worked at a rate not less than one-half his regular rate of pay." 29 C.F.R. § 778.114(a) (2016). It doesn't prohibit the employee from receiving additional compensation on top of the fixed salary. And once we accept that additional payments on top of the fixed salary are consistent with section 778.114 ... that's the ballgame. Whether an employee receives bonuses for performance or for the type of hours worked, neither form of additional pay offends section 778.114 -- provided that the employee receives a "fixed salary" covering every hour, whether few or many, in the workweek.

Id. at 1330-1331.

Further, as noted in Kneuss v. Advanced Clinical Empl. Staffing, LLC, 564 F.Supp.3d 1150, 1154 (N.D. Ala. Sept. 29, 2021): "[t]he Supreme Court has held that nothing in the text of the FLSA indicates that courts should interpret the exclusions to the regular rate narrowly. Instead, courts should give the exclusions a 'fair reading.' Encino Motorcars, LLC v. Navarro, ––– U.S. –––, 138 S. Ct. 1134, 1142, 200 L.Ed.2d 433 (2018)."

## 1.   Motion for Summary Judgment as to Albritton (Doc. 19)

The DOL argues that genuine issues of material fact exist regarding whether AMS violated the FLSA with regard to Albritton because:

> ... Defendant paid Mr. Albritton a $1,000 bonus for the workweek ending August 18, 2019, with no notation or indication that this bonus was anything other than a nondiscretionary bonus that should be included in the regular rate for the purpose of computing overtime premium pay. WHI Roberts Dec. at ¶15. .... records also revealed that Mr. Albritton worked four and a half hours of overtime during that workweek. Id; see also Exhibit 2.[] After accounting for both his regular wages and his bonus, Mr. Albritton should have been paid $95.54 for his overtime hours. WHI Roberts Dec. at ¶15; see also Exhibit 3.[] In reality, however, he was paid less than half that amount: $45.00. WHI Roberts Dec. at ¶15; see also Exhibit 3.

(Doc. 42-2 at 11 (footnotes omitted).  Specifically, the DOL's position is rooted in Investigator Roberts' Declaration which summarily asserts that Albritton was paid a non-discretionary $1,000 bonus for the workweek ending August 18, 2019, which should have been included in his regular pay when calculating overtime.

Initially, the evidence of record shows that for the workweek ending August 18, 2019, Albritton was paid at a regular rate of $20/hour for 40 hours and that in addition, he was paid overtime for 4.5 hours at the rate of $30/hour for a total of $135.00 and was not paid any per diem during the week (as alleged by the DOL).  (Doc. 19-1 (Decltn. Vasko-Norton), Doc. 9-2 at 2 (WH-55 for Albritton); Doc. 45 at 5-6; Doc. 13 at 5; Doc. 42-3 (WH-55 for Albritton)). In response to DOL's bonus contention, AMS argues that the DOL has just *assumed,* that the character of Albritton's $1,000 bonus was non-discretionary because there was no notation of it being anything other than that type of bonus. (Doc. 45 at 9-10).

As summarized in Kneuss, 564 F.Supp.3d at 1155-1157:

Generally, under § 207(e)(2), employers may exclude payments for non-work from an employee's regular rate of pay. *See Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901 (9th Cir. 2004) (payments for lunch periods when employees did not work excludable under § 207(e)(2)); *Minizza v. Stone Container Corp. Corrugated Container Div. East Plant*, 842 F.2d 1456 (3d Cir. 1988) (lump sum payments given as incentive to ratify a collective bargaining agreement excludable from the regular rate under § 207(e)(2)) ....

\*\*\*

.... a payment is not part of an employee's "regular rate" of pay if:

both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly ....

29 U.S.C. § 207(e)(3). In other words, discretionary bonuses are excluded from an employee's regular rate of pay. For a bonus to be discretionary, "the employer must retain discretion both as to the fact of payment and as to the amount until a time quite close to the end of the period for which the bonus is paid." 29 C.F.R. §

15

778.211(b). "If the employer promises in advance to pay a bonus, he has abandoned his discretion with regard to it." 29 C.F.R. § 778.211(b).

Unlike discretionary bonuses, "[b]onuses which are announced to employees to induce them to work more steadily ... or to remain with the firm ..." must be included in an employee's regular rate. 29 C.F.R. § 778.211(c). "Most ... bonuses contingent upon the employee's continuing in employment until the time the payment is made and the like are in this category; in such circumstances they must be included in the regular rate of pay." 29 C.F.R. § 778.211(c).

Moreover, Section 778.211(b) addresses the discretionary character of an excluded bonus, and Section 778.211(d) states that labels are not determinative ("[t]he label assigned to a bonus does not conclusively determine whether a bonus is discretionary under section 7(e)(3). Instead, the terms of the statute and the facts specific to the bonus at issue determine whether bonuses are excludable discretionary bonuses. Thus, regardless of the label or name assigned to bonuses, bonuses are discretionary and excludable if both the fact that the bonuses are to be paid and the amounts are determined at the sole discretion of the employer at or near the end of the periods to which the bonuses correspond and they are not paid pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly[]").

The DOL asserts that Albritton's bonus was non-discretionary and should have been included in his regular rate of pay when AMS calculated overtime. Apparently, however, the DOL has simply unilaterally classified Albritton's bonus as non-discretionary because there was no notation or indication by AMS that it was discretionary -- *i.e.*, no "label" of the bonus as discretionary. (Doc. 42). The DOL does not cite any statute, regulation, DOL Opinion, and/or caselaw to support this argument. Instead, the DOL's position appears based on conjecture. The DOL has not cited (or even argued) that there is any requirement for AMS to make a notation or indication that a bonus is discretionary or not, otherwise the bonus is presumed to be non-discretionary.

16

A review of AMS's <u>verified</u> summary and the DOL's WH-55 reveals that for this workweek Albritton's regular pay rate was $20/hour and he worked 4.5 hours of overtime at the one-and-a-half pay rate of $30/hour resulting in payment of $135.00 for overtime. (Doc. 13 at 5). AMS records also confirm that Albritton was not paid a per diem during this workweek. (<u>Id</u>.; Doc. 19-1 (Decltn. Vasko-Norton)). There is no indication as to how the DOL arrived at the $95.54 overtime amount asserted or how the DOL claims that Albritton was paid only $45.00 and Roberts' Declaration (Doc. 42-4 at 4 (Decltn. Roberts)) does not provide an explanation of how she arrived at those amounts. And as previously stated, AMS does not have the burden to prove that the bonus was discretionary. AMS has denied that they failed to correctly pay overtime and have produced records showing how they calculated Albritton's pay. The burden is on DOL to make a *prima facie* case that overtime is owed to Albritton. It has failed to do so. As such, AMS' motion for summary judgment is **GRANTED** as to the DOL's FLSA claims regarding Albritton's overtime for the workweek ending August 18, 2019.

2.   <u>**Motion for Summary Judgment as to Lenza**</u> **(Doc. 20)**

The DOL argues that genuine issues of material fact exist regarding whether AMS violated the FLSA with regard to Lenza's flat rate per diem payments for the workweeks ending September 30, 2018 and October 7, 2018. (Doc. 42 at 10). Per the DOL, AMS' calculations and arguments reveal issues of material fact because Lenza was not paid the GSA rate, but instead less than the GSA rate. (<u>Id</u>.) According to the DOL, the GSA rate for the September 30, 2018 workweek was $152.00/day and the GSA rate for the October 7, 2018 workweek was $160.00/day. (<u>Id</u>.)

In support of this, the DOL highlights AMS' brief and the Declaration of AMS' April Vasko-Norton in relation to that brief. (Doc. 42 at 10; Doc. 20-1 (Decltn. Vasko-Norton)). The DOL's opposition cites AMS' brief as creating a genuine issue of material fact because AMS stated

the per diem payments to Lenza were proper because AMS "was simply paying workers the per diem amount that the U.S. General Services Administration specified for the relevant worksite location." (Doc. 42 at 10 (quoting Doc. 20-2 at 2). AMS' brief does <u>not</u> state this. AMS' brief states that the per diem payment to Lenza was reimbursement of travel expenses which "were paid at less than or consistent with Federal Travel Regulation System, or IRS guidance." (Doc. 20-2 at 2). AMS' Reply asserts further, that it "paid all traveling employees a flat rate per diem consistent with the GSA rate for travel expense reimbursement in compliance with relevant federal regulations[]" which was "reasonable as a matter of law under the terms of 29 C.F.R. § 778.217(c)(2)(i) because it was less than the maximum per diem allowance permitted for travel under the ... GSA rates[.]" (Doc. 45 at 5, 12).

Additionally, the DOL's opposition cites the Declaration of Vasko-Norton, as relied upon by AMS but which "directly contradicts its position in this case. Defendant relies on the position that its per diem payments to Mr. Lenza .... were proper because Defendant was simply paying workers the per diem amount that the U.S. ... [GSA] ... specified for the relevant worksite location. Doc. 20-2 at 2. Ms. Vasko-Norton's Declaration reveals that this is factually incorrect." (Doc. 42 at 10 (citing Doc. 20-2 at 2). According to the DOL, via the Declaration:

> Ms. Vasko-Norton reports that the GSA rate for the workweek ending September 30, 2018 for Mr. Lenza's purported worksite was $152.00 per day *and that Defendant, accordingly,* paid Mr. Lenza $900 in per diem. Doc. 20-1 at 2. However, $900 of per diem at a rate of $152 per day equates to 5.92 days of per diem. Similarly, Ms. Vasko-Norton reports that the GSA rate for the workweek ending October 7, 2018 for Mr. Lenza's purported worksite was $160.00 per day *and that Defendant, accordingly*, paid Mr. Lenza $600 in per diem. Id. However, $600 of per diem at a rate of $160 per day equates to 3.75 days of per diem.

(Doc. 42 at 10 (emphasis added)). Per the DOL then, "Ms. Vasko-Norton's own declaration creates a genuine issue of material fact as to the legitimacy of Defendant's payment of per diem and its account of how it made such per diem payments: Defendant claims it simply paid the daily GSA

18

per diem rate but, in the same breath, provides facts revealing it *did not pay* the daily GSA

per diem rate. Instead, it paid Mr. Lenza an amount that does not equate to an application of the GSA

daily per diem rate for the number of days he worked in the specified work weeks." (Doc. 42 at

10-11 (emphasis in original)). However, the Vasko-Norton Declaration does <u>not</u> state what the

DOL asserts.

Notably, the Vasko-Norton Declaration does not state that "Defendant [AMS] accordingly"

paid Lenza the maximum GSA per diem rate. The Declaration states that Lenza was paid a per

diem to reimburse him for travel expenses from his home to the jobsite, and then merely references

the GSA rate for expenses reimbursement for the September 2018 ($152.00) and October 2018

($160.00) workweeks. (Doc. 20-1 at 2 (Decltn. Vasko-Norton)). Vasko-Norton's Declaration does

not state that AMS paid Lenza those exact GSA rates, and the calculations set forth in the prior

paragraph of the Declaration confirm AMS' records instead -- that AMS paid a rate *less than* the

GSA rate. (<u>Id</u>.) Thus, no genuine issues of material fact are created by the DOL's unilateral

mischaracterization of either AMS' brief or the Vasko-Norton Declaration.

Moreover, AMS' <u>Verified</u> Summary shows that for the workweek ending September 30,

2018, Lenza was paid a regular rate of $15/hour for 40 hours ($600.00), overtime for 13.73 hours

at the rate of time-and-one-half or $22.50/hour ($308.93), and a $900.00 per diem (that AMS

identifies was for six (6) days of travel to Panama City, FL at a $150.00/day per diem rate). (Doc.

13 at 70; Doc. 45 at 6). Likewise, AMS' <u>Verified</u> Summary shows that during the workweek ending

October 7, 2018, Lenza was paid a regular rate of $15/hour for 40 hours ($600.00), overtime for

0.19 hours at the rate of time-and-one-half or $22.53/hour ($4.28), and a $600.00 per diem (that

AMS identifies was for four (4) days of travel to Panama City, FL at a $150.00/day per diem rate).

(<u>Id</u>.) Additionally, AMS and AMS' controller in charge of payroll, Vasko-Norton, describe *how*

Lenza was paid for these workweeks: Lenza worked approximately 212.4 miles away from his home during the workweeks ending September 30, 2018 and October 7, 2018 (10 workweek days total) and AMS paid him a $900.00 per diem for six (6) days for the September 30, 2018 workweek (*i.e.*, a $150.00/day per diem), and a $600 per diem for four (4) days for the October 7, 2018 workweek (*i.e.*, a $150.00/day per diem).  (Doc. 45 at 11; Doc. 20-1 at 2 (Decltn. Vasko-Norton)).

Overall, it appears that the DOL's position is rooted in a false premise.  Namely, that AMS is legally required to pay the maximum per diem rate set forth by the GSA.  This is incorrect.  The Court finds persuasive DOL 19-21 CCH-WH ¶ 31,672. Opinion Letter No 2688 (FLSA2020-12)[11] (August 31, 2020) (emphasis in original, footnote omitted), issued by the Wage and Hour experts at the DOL, which provides that:

> A reimbursement for employee travel expenses qualifies as reasonable *per se* under 29 C.F.R. § 778.217(c)(2) as a payment that may be excluded from the regular rate if it satisfies two requirements. First, it must be a payment for expenses incurred "by reason of action taken for the convenience of his employer." *Id*. § 778.217(a). Second, it must be "the same or *less than* the maximum reimbursement payment" permitted by the IRS rate. *Id*. § 778.217(c)(2)(i) (emphasis added). A regulation that explicitly allows employers to approximate expenses at a rate *lower* than the IRS standard rate cannot be read to require employers to use the IRS standard rate.

---

[11] Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944) ("[T]he rulings, interpretations and opinions of the [agency], while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance."). As addressed in Matías-Rosselló v. Epoch LLC, 2022 WL 993601, *7-8 (D. Puerto Rico Apr. 1, 2022):

> ... The Court's starting point is, as noted above, § 531.35. That regulation, in turn, references 29 C.F.R. § 531.32(c), which cross-references 29 C.F.R. § 778.217. And § 778.217 addresses the matter regarding reimbursement for expenses. Pertinent to our discussion is § 778.217(c)(2)(1) ...
>
> ***
>
> ... It is worth mentioning as well that opinion letters, such as this DOL Letter, are "interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—[and] do not warrant *Chevron*-style deference." *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000). Accordingly, interpretations rendered by way of opinion letters are "entitled to respect ... but only to the extent that those interpretations have the 'power to persuade.' " *Id.* (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)) ... none of the Parties have raised the matter as to whether § 531.35, the main regulation at issue in this case is ambiguous. This would shed light on the level of deference, if any, that we should afford to ... the DOL Letter.

*See also Sullivan*, 362 F. Supp. 3d at 1154-55, 1174; *Perrin v. Papa John's Int'l, Inc.*, 114 F. Supp. 3d 707, 721-22 (E.D. Mo. 2015).[]

The statute in question states as much: "(2) A reimbursement amount for an employee traveling on his or her employer's business is per se reasonable, and not disproportionately large, if it: (i) Is the same or less than the maximum reimbursement payment or per diem allowance permitted for the same type of expense under 41 CFR subtitle F (the Federal Travel Regulation System) or IRS guidance issued under 26 CFR 1.274–5(g) or (j)[.]" 29 C.F.R. § 778.217(c)(2)(i) (emphasis added). See, e.g., Bradford v. Team Pizza, Inc., 2021 WL 2142531, *10 (S.D. Ohio May 26, 2021) ("[t]he plain language of this section ... contemplates a reimbursement at less than the IRS rate[]").  The DOL has provided no case law or statute to suggest a contrary result.

Thus, Lenza's per diem pay rate of $150.00/day was reasonable as a matter of law per 29 C.F.R. § 778.217(c)(2)(i) as it was "less than" the maximum per diem allowance permitted for travel under the Federal Travel Regulation System (GSA rate). The per diem rate does not have to "match" the stated (maximum) GSA rate and AMS paid Lenza a reasonable rate under the statute. As such, AMS' motion for summary judgment is **GRANTED** as to the DOL's claims regarding AMS' alleged FLSA violation related to Lenza's per diem for the workweeks ending September 30, 2018 and October 7, 2018.

## IV.    Conclusion

Upon consideration, it is **ORDERED** that AMS' partial motion for summary judgment as to Albritton (Doc. 19) is **GRANTED** and AMS' partial motion for summary judgment as to Lenza (Doc. 20) is **GRANTED.**

**DONE** and **ORDERED** this the **16**th day of **August 2022**.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**