## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARTIN J. WALSH,** | ) | |
| **Secretary of Labor, United States** | ) | |
| **Department of Labor,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 1:21-00375-KD-B** |
| | ) | |
| **ALLIANCE MECHANICAL SOLUTIONS** | ) | |
| **LLC,** | ) | |
| **Defendant.** | ) | |

## ORDER

This action is before the Court on the Defendant's Motion for Partial Summary Judgment regarding wage misclassification (per diem versus overtime) for employees listed in Exhibit A (Doc. 60-1 (32 employees) derived from Doc. 1-2 (original "Appendix A "(154 employees)) (Docs. 60, 61), the Plaintiff's Response (Doc. 63, Doc. 63-1 ("Exhibit 1" (82 employees)), the Defendant's Reply (Doc. 64), the Plaintiff's Supplement (Doc. 66-1 "Amended Appendix A") (82 employees)), and the Plaintiff's Second Supplement (Doc. 69).

## I.    **Findings of Fact**[1]

From December 17, 2017 to December 29, 2019, Plaintiff, the United States Department of Labor (DOL) via the Wage and Hour Division (WHD) investigated Defendant Alliance Mechanical Solutions, LLC (AMS)[2] to determine whether it was covered by, and complying with,

---

[1] The facts are taken in the light most favorable to the non-movant. Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

[2] AMS is a welding and pipefitting company in Baldwin County, Alabama, an employer subject to the FLSA, and an enterprise under § 3(r) of the Act, 29 U.S.C. § 203(r) with an annual gross volume of sales made or business done of no less than $500,000 within the meaning of § 3(s)(1)(A) of the Act, 29 (Continued)

the *Fair Labor Standards Act of 1938* (FLSA), as amended, 29 U.S.C. § 201, *et seq*. (Doc. 9 at 1 (DOL Interrog, Resp. #1)). The DOL concluded that AMS employees were not paid the full overtime premium to which they were entitled under the FLSA, alleging that AMS engaged in a widespread and regular practice of: 1) misclassifying a portion of employee's regular wages as per diem to reduce the regular rate upon which employees' overtime premium is based, even when the employees had not traveled outside of the community area for work and had not incurred expenses in relation to the per diem they received;[3] and 2) even if the per diem that the employees received was properly excluded from the regular rate of pay, AMS failed to properly calculate and pay those employees an overtime premium equivalent to one-and-one-half times the regular pay rate, instead paying them a smaller overtime premium.  (Doc. 9 at 3).

On August 25, 2021, the Secretary of Labor, U.S. Department of Labor, Martin J. Walsh initiated this action on behalf of the DOL, pursuant to Section 17 of the FLSA, 29 U.S.C. § 217, to enjoin AMS from violating -- "[s]ince at least December 31, 2017[]" -- Sections 6, 7, 11(c), 15(a)(2) and 15(a)(5) of the FLSA, 29 U.S.C. § 201, *et seq*.; and, pursuant to Section 16(c) of the FLSA, 29 U.S.C. § 216(c), to recover unpaid overtime wages and an equal amount as liquidated damages.[4] (Doc. 1). Attached to the Complaint was Doc. 1-2 ("Appendix A"), listing **154 AMS**

---

U.S.C. § 203(s)(1)(A). (Doc. 9 at 2).  Brian Weil is AMS' Owner and April Vasko-Norton is AMS' Vice-President and Controller.  (Doc. 9 at 2).  AMS provides pipe and structural fabrication and installation services to marine and industrial sites as well as construction services in several states.

[3] The DOL describes this as a  "scheme to misclassify part of employees' regular wages as per diem in a way that lowers the regular rate upon which the employees' overtime premium is based constitutes an 'unrealistic and artificial' computation that negates the FLSA's statutory purpose."

[4] Section 6 requires employers pay a minimum hourly wage, 29 U.S.C. § 206; Section 7 requires that an employee who works for more than 40 hours a week is entitled to overtime compensation equal to one and a half times his regular rate of pay, 29 U.S.C. §§ 206, 207; Sections 11(c) and 15(a)(5) require employers keep accurate and complete payroll and timekeeping records, 29 U.S.C. §§ 211(c) and 215(a)(5); Section 16(c) provides that an employer who violates these provisions is liable for back wages plus an equal (Continued)

**current and/or former employees** at issue. As part of its relief, the DOL requests the Court "permanently enjoin AMS from violating the provisions of §§ 6(a), 7(a), and 11(c) of the Act and pursuant to § 16(c) of the Act, 29 U.S.C. § 216(c), award back wages for a period of three (3) years prior to the commencement of this action, and an additional equal amount as liquidated damages to employees (as named in Appendix 'A' attached hereto and made a part hereof and such other employees as hereafter may be identified and named prior to or at trial). (Doc. 1 at 3).

On October 26, 2021, the Preliminary Scheduling Order For FLSA Cases issued (the FLSA Scheduling Order). (Doc. 7). The FLSA Scheduling Order set November 16, 2021 for the DOL to respond to the Court's Interrogatories[5] (Doc. 7 at 5-8) and December 9, 2021 for AMS to file a Verified Summary of all hours worked "by the Plaintiff(s)" during each relevant pay period, the rate of pay and wages paid, including overtime pay if any (including all time sheets and payroll records that support or relate to the time periods in the Summary) (Doc. 7; Doc. 12 (amended)).

In response to FLSA Interrogatories propounded by the Court, on November 9, 2021 the DOL asserted that **115 AMS current and/or former employees** were due $62,213.35 in overtime back wages as a result of violations of Section 7 of the FLSA during the investigative period, as listed in **"Exhibit A."** (Doc. 9 at 1; Doc. 9-1). The attached "Exhibit A" (Doc. 9-1 (115 employees)) did not match Appendix A (Doc. 1-2 (154 employees)). Specifically, the DOL asserted that it was litigating on behalf of 115 of AMS' current and/or former employees (Doc. 9

---

amount of liquidated damages, 29 U.S.C. §§ 215-216; and Section 17 authorizes prospective and restitutionary injunctions. 29 U.S.C. § 217.

[5] "The FLSA Scheduling Order directs a number of interrogatories to each plaintiff. The interrogatories query each plaintiff's work history with the company, pay rates, and position. After entry of the Court's standard FLSA scheduling order, however, the parties proposed a different order with discovery requirements directed to Defendant and more narrowly tailored to Plaintiffs' claims." Hornady v. Outokumpu Stainless USA, 572 F.Supp.3d 1162, 1190 (S.D. Ala. Nov. 18, 2021).

at 1) and attached a document showing 115 plaintiff employees' records (Doc. 9-1 "Exhibit A"). Per the DOL, "Exhibit A" lists 115 employees and "provides the name of individual employees[]" at issue in this case, <u>plus</u> "[t]he Secretary also seeks recovery of back wages [and liquidated damages and an injunction] due these [115] and other employees and former employees for the period from December 29, 2019 to the present."  (Doc. 9 at 1, 3). In otherwords, the DOL appears to have amended the plaintiff employee list (Appendix A (Doc. 1-2)) without filing an amended complaint. (Doc. 58 at 2 at note 1).

On December 9, 2021, AMS filed the Verified Summary (Doc. 13) as well as Notice of Service on the DOL of "a copy of all timesheets and payroll records for each Plaintiff that relate to the time periods identified in Defendant's Verified Summary of Plaintiffs' Hours Worked, Rate of Pay, and Wages Paid[]" (Doc. 14).[6]  As such, the Court, via the Preliminary Scheduling Order for FLSA Cases (Doc. 7), tailored FLSA discovery between the parties through December 2021.

On February 10, 2022, the parties filed their Rule 26(f) Report in which the parties asserted:

Plaintiff's Proposal: ....The parties will need discovery on all legal and factual issues relating to the Plaintiff's claims for relief and damages and the Defendants' affirmative defenses as well as all other relevant matters within the scope of permissible discovery under Rule 26 of the Federal Rules of Civil Procedure.

Defendant's Proposal: (1) Whether the 115 AMS employees identified by Plaintiff were properly paid compensation, including overtime premium, based on the hours worked as reported to AMS. (2) If any of the 115 AMS employees identified by Plaintiff were not properly paid compensation, including overtime premium, based on hours worked as reported to AMS, the amount of compensation owed and the reason for the incorrect payment. (3) Any other legal or factual issues relevant to (1) and (2) above and the parties' claims and defenses.

 (Doc. 18 at 3).  On March 2, 2022, the Court held a discovery status conference, at which time the DOL stated that only limited discovery remained necessary beyond that which had already

---

[6] Verified (sworn to) by AMS' Brian Weil, and setting out "the hours worked by each employee, the rate of pay, wages paid including overtime pay, for each employee[.]"  (Doc. 13 at 1).

been conducted, specifically: 1) a representative sample of raw data (time sheets) to back-up AMS' per diem/overtime representations; and 2) records through the pendency of litigation to see if alleged per diem/overtime violations were continuing at AMS. (Doc. 24). There were no objections to the issuance of a standard Rule 16(b) Scheduling Order.  On March 14, 2022, the Rule 16(b) Scheduling Order issued, setting a March 2, 2023 Final Pretrial Conference, an April 2023 bench trial, the close of discovery as September 2, 2022, and the deadline to amend pleadings as April 25, 2022 (among other deadlines).  (Doc. 26; Doc. 27 (Amended Rule 16(b), 3/14/22)). On May 9, 2022, AMS produced its responses to the DOL's interrogatories, requests for production, and requests for admission.  (Doc. 35).

 On May 26, 2022, citing Fed.R.Civ. P. Rule 15(a) and (c), the parties filed a joint motion seeking leave of Court for the DOL to amend its Complaint to correct what it identified as a clerical error ("to amend the period for which Plaintiff seeks back wages ... from three (3) years to two (2) years[]" ... to correct a clerical error in which Plaintiff misstated the number of years for which Plaintiff seeks back wages." (Doc. 36). Because the amendment was to correct a typographical error, the Court granted the motion on June 15, 2022 without comment or discussion (Doc. 37), and the DOL filed an Amended Complaint (Doc. 38 (amended)).

In the Amended Complaint, the DOL, on behalf of "employees (as named in Appendix 'A') attached hereto and made a part hereof and such other employees as hereafter may be identified and named prior to or at trial[,]" brought the action per 29 U.S.C. §§ 216 and 217 alleging that "[s]ince at least December 31, 2017[]" AMS had violated: 1) Sections 6, 7, 11(c), 15(a)(2), and 15(a)(5) of the FLSA; and 2) Sections 16(c) of the FLSA, 29 U.S.C. § 216(c). (Doc. 38 at 1). Specifically, per the DOL:

> Since at least December 31, 2017, Defendant repeatedly violated the provisions of §§ 7 and 15(a)(2) of the Act, 29 U.S.C. §§ 207 and 215(a)(2), by employing

5

employees, including welders and pipefitters, in an enterprise engaged in commerce or in the production of for their employment in excess of such hours at rates not less than one and one-half times the regular rates at which they were employed.

*** 

Since at least December 31, 2017, Defendant, an employer subject to the provisions of the Act, violated the provisions of §§ 11(c) and 15(a)(5) of the Act, 29 U.S.C. §§ 211(c) and 215(a)(5), and Regulations found at 29 C.F.R. § 516 by failing to make, keep and preserve adequate and accurate records of the persons employed and of the wages, hours and other conditions and practices of employment maintained by them, as prescribed in the aforesaid Regulations.

*** 

WHEREFORE, cause having been shown, Plaintiff prays for Judgment pursuant to § 17 of the Act, 29 U.S.C. § 217, permanently enjoining Defendant, its agents, servants, employees and all persons in active concert or participation with it from violating the provisions of §§ 6(a), 7(a), and 11(c) of the Act and pursuant to § 16(c) of the Act, 29 U.S.C. § 216(c), awarding back wages for a period of two (2) years prior to the commencement of this action, and an additional equal amount as liquidated damages to employees (as named in Appendix "A" attached hereto and made a part hereof and such other employees as hereafter may be identified and named prior to or at trial); and for such other and further relief as may be necessary and appropriate including costs of this action.

(Doc. 38 at 2-3). The Amended Complaint had no document attached (no "Appendix A"). Thus, no new version of the plaintiff employee list was attached, to amend or replace the original "Appendix A" listing 154 employees (Doc. 1-2).

On July 22, 2022, AMS produced supplemental responses to the DOL's interrogatories and requests for production, which were made available for inspection and copying to the DOL. (Doc. 44; Doc. 45 at 7 at note 1). Thereafter, discovery continued. On September 2, 2022, the Court held a discovery conference during which the Court granted the parties' motion to extend the discovery and dispositive motion deadlines. (Doc. 55, 57). At that time, the parties agreed that AMS had produced over 18,000 documents in late July 2022/early August 2022 that the DOL had been reviewing, and while the conference discussed *potential* responses to this discovery, there is no indication of such on the court record. Discovery closed on October 3, 2022.

On November 3, 2022, AMS filed the current motion for partial summary judgment regarding the DOL's wage misclassification claims (alleging that AMS misclassified overtime as travel per diem) as to **32 of the 154 employees** listed in the DOL's original employee list "**Appendix A"** (Doc. 1-2) -- Doc. 60-1  (listing 32 employees). (Docs. 60, 61).  On November 22, 2022, in response, the DOL submitted **"Exhibit 1"** which includes computations on 82 employees. (Doc. 63-1 ("Exhibit 1")). By way of explanation, the DOL argues that "Appendix A:"

> ... present[ed] only an incomplete picture of the alleged violations in this case ... it reflects Plaintiff's allegations only through the conclusion of the Wage and Hour Division's initial period of investigation. ... Plaintiff seeks recovery for all period of investigation .... There are, in fact, additional alleged violations, including, at the very least, those summarized in Exhibit 1 to this Response. **Exhibit 1 reflects Plaintiff's current position**, including additional violations occurring since August 25, 2019 it uncovered in Defendant's most recent records. Plaintiff notes that this includes additional violations pertaining to more than half of the employees identified in Defendant's Exhibit A.
>
> ***
>
> ... Exhibit 1 is not necessarily an exhaustive list of the FLSA violations Defendant has committed. Rather, it is merely the most updated list of violations the Secretary is currently able to compile based on the information available to WHD. However, because Plaintiff seeks back wages for all violations through the pendency of litigation, it is entirely possible that other employees could be added to this list or, similarly, that additional weeks of improper per diem could be identified for currently-listed employees. For instance, other employees may experience additional violations between the final date for which Defendant has provided records and the conclusion of litigation ...

(Doc. 63 at 3-4, 6) (emphasis added).

In its December 2, 2022 reply, AMS disputes the DOL's ability to unilaterally amend the employee list and notes further, that its review of Doc. 63-1 (Exhibit 1) indicates that the DOL is now asserting new claims for **37 AMS employees not previously listed in "Appendix A" (Doc. 1-2) [or listed in Doc. 9-1]** but which are now listed in the "Exhibit 1" (Doc. 63-1) accompanying the DOL's response -- Exhibit 1 (new WH-55 documents) (Doc. 63-1), Exhibit 3 (Declaration of

7

Sullivan) (Doc. 63-3), and Exhibit 4 (Doc. 63-4) -- *i.e.*, the DOL is asserting **new workweek claims for new plaintiffs.** (Doc. 64).

On December 16, 2022, in connection with AMS' prior partial motion for summary judgment on the statute of limitation issue (now moot), the Court ordered the DOL to file a Supplement to its Response indicating whether it still seeks back wages and liquidated damages in the manner alleged by AMS *supra*, and if not, to state so on the record and file an Amended Appendix A to clarify the claims and issues pending before the Court. (Doc. 65). The Court anticipated that claims that were not within the statute of limitations would be omitted. However, in its Supplemental response (Doc. 66) the DOL endeavored to use "Exhibit A" (Doc. 63-1) as a tool to add new claims and reserve the right to continue to add new claims at any point in this case (reattaching it as Doc. 66-1 and renaming it "Amended Appendix A"). The propriety of this was, and remains, disputed by AMS. And the DOL's position directly conflicts with the Rule 16(b) Scheduling Order issued by this Court (Doc. 27) which allowed amendments only until April 25, 2022. As such, on January 12, 2023, the Court ordered the DOL "to explain why it believes it is not subject to the Court's Scheduling Order regarding amending claims[]" and to file a Second Supplement "identifying the specific statutes or case law in support of its position that it is not subject to the Court's Scheduling Order and that it can amend the employee plaintiff list at any stage in the litigation including through post-trial judgment." (Doc. 68).

On January 12, 2023, the DOL filed the Second Supplement. (Doc. 69). The DOL did not identify any statutes, cited only two (2) cases from other non-binding jurisdictions, and stated that it relied on Fed.R.Civ.P. Rule 15 to file "Exhibit 1" (Doc. 63-1). The DOL argues that 1) given the scope of the allegations in FLSA complaints (and the Amended Complaint in this case), amending a plaintiff employee list does not amend the complaint and so there is no need to seek

leave to amend and such would not violate any scheduling order if amended after the applicable deadline; and 2) it can unilaterally add, remove, or otherwise "update" the list of allegedly affected current and/or former plaintiff employees in an FLSA case (amend the employee list) at any time -- up to and during trial, post-judgment, post-settlement, etc.

## II.      <u>Amendments to the Plaintiff Employee List in FLSA cases</u>

At the outset, the Court finds helpful a review of what has been exchanged to date and pursuant to what schedules. The DOL's WHD completed its investigation of AMS on December 29, 2019 after thoroughly investigating the employer for over (2) years -- December 17, 2017 to December 29, 2019. That investigation resulted in AMS' production of "copious amounts of information" to the DOL. Additionally, since this lawsuit was filed AMS has produced "approximately 3,096 pages of physical timesheets and numerous pages of spreadsheets containing payroll records for 115 different employees for Plaintiff's requested time period of 72 weeks[]" (Doc. 30 at 6; Doc. 45 at 4), including 140 pages of documents filed in this Court (Doc. 13). AMS also produced approximately 18,000 documents in late July 2022/early August 2022. With this in mind, the Court addresses the DOL's contentions.

**<u>First</u>**, as argued by the DOL, the breadth of the allegations of the FLSA Complaint allow it to amend a plaintiff employee list (Appendix A) *without* such constituting a formal amendment to a complaint, *without* having to file a motion for leave to file an amended complaint, and/or *without* having to file a motion to amend a scheduling order when such amendment is sought after the amendment to pleadings deadline has closed.  The Court cannot agree.

"Plaintiff prays for Judgment ... to employees (**as named in Appendix 'A' attached hereto and made a part hereof** and such other employees as hereafter may be identified and named prior to or at trial …")[.]" (Doc. 38 at 3 at VI).  For the DOL to assert that "Appendix A" is an

independent stand-alone document, not part of the complaint, such that amending it does not amend the complaint, runs contrary to its own allegations in this case.

Nevertheless, the Court addresses the DOL's argument that given the broad scope of the allegations of its complaint ("such other employees as hereafter may be identified and named prior to or at trial[]"), revisions to plaintiff employee lists are neither amendments to a complaint nor amendments of a pleading such that no motion to amend is required.  In support, the DOL cites a case from a federal court in the Northern District of West Virginia, U.S. Dept. of Labor v. Fire & Safety Investigation Consulting Services, LLC, 2018 WL 2065941, *3 (N.D.W. Va. May 3, 2018):

> ...[t]he allegations in the original complaint … were not confined to those employees specifically listed in Schedule A. In addition to referencing 'certain present and former employees listed in the attached Schedule A,' the complaint indicated that back wages and liquidated damages may be due for 'certain present and former employees presently unknown.' Therefore, there has been no attempt by the DOL to amend its complaint by filing a Revised Schedule A...

The DOL also cites a case from a federal court in the Eastern District of Virginia Acosta v. Medical Staffing of America, LLC, 2019 WL 4307867, *2 (E.D. Va. Sept. 11, 2019) (Steadfast II):[7]

---

[7]Citing Medical Staffing of America, LLC, 2019 WL 4307867, *2 ("[T]he addition of employees to a Revised Schedule A [is] a 'purely technical matter[]'") citing Reich v. Great Lakes Collection Bureau, 176 F.R.D. 81-85 (W.D.N.Y. June 27, 1997) (allowing the DOL to amend the employee list after seeking leave of Court to do so because the original complaint put defendant on notice of relief on behalf of "employees presently unknown" and the prejudice to the defendant that may result from the additional cost of discovery in defense of the case was insufficient to warrant denial of leave to amend). Of note, in Reich, the Secretary sought leave of Court to amend the complaint and did so by seeking leave to amend the scheduling order "to allow for future additions to the employee list" in an FSLA case.  Id. at 83. The Reich court also noted: "Once the Secretary brings a § 16(c) action to recover actual and liquidated damages on behalf of an employee, the employee's right to seek that same relief under § 16(b) "shall terminate ..., [and a]ny sums thus recovered by the Secretary ... on behalf of an employee pursuant to [§ 16(c)] shall be held in a special deposit account and shall be paid, on order of the Secretary ... directly to the employee or employees affected." 29 U.S.C. § 216(c). Likewise, the employee's private right of action under § 16(b) "terminate[s]" when the Secretary brings a § 17 action for injunctive relief." Id. at 83-84. The Reich court noted further that "in a suit under §16(c)" as is the case here, "the Secretary must name the employees involved in order to toll the statute of limitations[]" and that in a case allowing this type of amendment (the employee list), the Secretary moved to amend the pleadings at trial to conform to the evidence but the defendant only presented a vague statement that it would have defended the case differently and did not sufficiently show prejudice to its defense of the case on the merits (citing Hodgson v. Colonnades, Inc. 472 (Continued)

>...the allegations in the Secretary's Complaint were not confined to those employees specifically listed in the original Schedule A. In addition to the employees listed in the original Schedule A, the Complaint seeks additional amounts of back wages and liquidated damages for continuing violations of the FLSA and for violations presently unknown to the Secretary ... as a general matter, the Secretary should be permitted to submit a Revised Schedule A without amending his complaint ...

According to the DOL, in these cases the DOL revised plaintiff employee lists without moving to amend the complaint and the courts permitted such due to the open-ended allegations of FLSA complaints which are also present in the Amended Complaint in this case.  From this the DOL urges the SDAL to follow suit --*i.e.*, conclude that amending employee lists in an FLSA action does not amend the complaint as the DOL's broad allegations inherently "reserve the right" to amend.

Again, the Court cannot agree.  The undersigned's review of FLSA caw law -- while neither abundant nor definitive on this point -- suggests that the conclusions reached in the two (2) cases cited by the DOL lack persuasive authority.  A number of cases from other courts indicate that the DOL often moves to amend the complaint when seeking to revise a plaintiff employee list, and these cases analyze the DOL's ability to amend the list as a motion to amend the complaint or pleadings. See, e.g., Secretary of Labor, U.S. Dept. of Labor v. Valley Wide Plastering Const. Inc., 2022 WL 2390950 (D. Az. Jul. 1, 2022) (assessing the DOL's motion to modify the scheduling order for leave to file an amended Exhibit A employee list as a motion to amend "the pleadings"); Acosta v. Holland Acquisitions, Inc., 2018 WL 6242231, *3-4 (W.D. Penn. Nov. 29, 2018) (the DOL filed motions for leave of court to amend the complaint to amend the Schedule A employee list attached thereto, to include hundreds of additional named individuals (versus the "Initial Schedule A" employee list that listed "89 specific individuals") which was granted. And on

---

F.2d 42 (5th Cir. 1973) and 6A CHARLES A. WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL, § 1495).  Id.

subsequently review of the Defendant's partial motion to dismiss, granted the motion and restricted the DOL to the "Amended Schedule A" plaintiff employee list to "confine the final universe of claimants for whom the Secretary seeks damages[]" holding that "[a]ll claims for monetary relief available under Section 16(c) on behalf of unnamed individuals not listed in Amended Schedule A are dismissed[]"); Acosta v. Austin Elec. Servs., LLC, 2018 WL 5849179, *2-3 (D. Az. Nov. 8, 2018) (noting the DOL filed a motion for leave to amend the complaint to amend Exhibit A of its First Amended Complaint (the employee list) to add 99 employees to the complaint, which was granted); Solis v. A Touch of Glass Enterp., Inc., 2010 WL 11597440, *1 (D. New Mexico Mar. 23, 2020) (noting that the DOL amended the complaint twice "to revise the list of affected employees named in Exhibit A[]"); Acosta v. Wellfleet Comm., LLC, 2019 WL 1284100, *2-3 (D. Nev. Mar. 19, 2019) (the DOL filed a motion for leave to amend or correct the complaint to add 324 additional employees to the list of individuals from whom the DOL was seeking back wages, which was construed as a motion to modify the scheduling order under Rule 16(b) in order to amend the complaint and which was granted based on good cause due to the defendant's refusal to produce necessary documents during discovery and the DOL's diligence, but under the subsequent Rule 15(a) review, permitted defendants additional time to move to reopen discovery given the DOL's amendment); Solis v. Security Credit Sys., Inc., 2011 WL 996792, *2 (W.D.N.Y. Mar. 17, 2011) (the DOL filed a motion for leave to amend Exhibit A (list of 116 employees) attached to the original complaint, to add 83 employees revealed during discovery alleged to be entitled to overtime compensation under the FLSA); Solis v. Best Miracle Corp., 2009 WL 10674032, *2 (C.D. Cal. Dec. 23, 2009) (the DOL filed a motion to amend the complaint to add individuals to the employee list which was granted); Reich v. Southern New England Telecomm.

Corp., 892 F. Supp. 389, 404 (D. Conn. 1995) (analyzing the DOL's motion to amend the complaint with a "revised Exhibit A.")

In this Court, the particular nature of FLSA cases merit particular attention; hence, the entry of an FLSA specific preliminary scheduling order before entry of a Rule 16(b) Scheduling Order. Both of which combined are particularly designed to be "more narrowly tailored to Plaintiffs' claims." Hornady v. Outokumpu Stainless USA, 572 F.Supp.3d 1162, 1190 (S.D. Ala. 2021). For FLSA cases *especially*, focusing a plaintiff's claims and identifying the scope of discovery is significant and is inextricably tied to the employee plaintiffs and each of his/her fact specific claims -- against which the defendant employer then must defend. Hence, the need for an initial FLSA specific scheduling order, and then later, a Rule 16(b) Scheduling Order.  The FLSA Scheduling Order is issued first and separately "[t]o meet the particular circumstances of this [FLSA] case, and consistent with the Court's duty to secure the just, speedy, and inexpensive determination of this action, see Fed. R. Civ. P. 1[]"  (Doc. 7 at 1).  The FLSA Scheduling Order directs specific Court interrogatories to be propounded to the plaintiff which the plaintiff must answer, and for the defendant employer to serve on the plaintiff a verified summary of all hours worked "by the [specific] Plaintiff(s)" (the allegedly affected employees) during each relevant pay period, rate of wage, wages, paid, overtime pay, etc. In this Court, having plaintiffs (the allegedly affected employees) remain unknown would thwart the purpose of an FLSA Scheduling Order and the Court's duty to secure the just, speedy, and inexpensive determination of an FLSA action.  "The purpose behind the FLSA scheduling order is to facilitate the expeditious and cost-effective resolution of FLSA unpaid wages claims. The parties are required to exchange documents and the plaintiff is required to answer court interrogatories, specifically tailored to claims for unpaid wages." Ford v. Property Preservation Experts, Inc., 2012 WL 13140716, *1 (M.D. Fla. May 29,

2012). Thus, the FLSA Scheduling Order is a tool "to avoid th[e] situation where the parties waste time, money, and judicial resources litigating a loser. Neither party explains why they allowed this case to continue for so long after having the documents showing the overtime claim was doomed to fail." Auclair v. Bonita Springs Lodge #2753 Benevolent and Protective Order of Elks of the U.S.A., Inc., 2020 WL 3205950, *2 (M.D. Fla. Jun. 15, 2020).

Necessarily, timely identifying the plaintiffs (affected employees) in an FLSA case is crucial, and from that, the materials produced in discovery and answers provided establish a litigation (or settlement) roadmap for the parties. The effectiveness of this process would be undermined if plaintiffs -- whether the DOL or otherwise -- could unilaterally perpetually amend an employee list without seeking leave of Court to so amend. The result would be claims that are a constant moving target.

**Second**, the DOL argues that it can unilaterally add, remove, or otherwise "update" the list of allegedly affected current and/or former plaintiff employees in an FLSA case (amend the employee list (often referenced as Schedule A/Appendix A) at any time -- including during trial, post-judgment, and/or post-settlement. The Court cannot agree.

Having concluded that a revision to a plaintiff employee list by the DOL in an FLSA action is an amendment to a complaint in the SDAL, the DOL's amendment (if construed as a motion to amend) is improper unless it complies with certain rules. In support of its position, the DOL states that it relied upon Fed.R.Civ.P. Rule 15 to conclude that no motion to amend was required. Rule 15 does not apply to amendments after the close of an amended pleadings deadline or when an amendment to a Rule 16(b) scheduling order is sought -- both of which is the status here. Rather, Fed.R.Civ.P. Rule 16(b), and its "good cause" standard governs.

As summarized by the Eleventh Circuit in Insight Securities, Inc. v. Deutsche Bank Trust Co. Americas, 2022 WL 2313980, *6 (11th Cir. Jun. 28, 2022):

> Federal Rule of Civil Procedure 16(b)(1) requires that a district court judge "must issue a scheduling order" in cases before it, with limited exceptions not applicable here. A district court's "scheduling order must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). Once a district court issues its scheduling order, the order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Where a party seeks a modification of the scheduling order or seeks leave to amend the complaint after the deadline in the scheduling order has passed, it must satisfy Rule 16's good cause requirement, rather than the more lenient "when justice so requires" standard under Federal Rule of Civil Procedure 15. See Sosa, 133 F.3d at 1418–19.
>
> The "good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" Id.(quoting Fed. R. Civ. P. 16 advisory committee's note). This Court has considered the diligence of the party seeking leave to amend as a factor in the good cause analysis. See, e.g., Romero v. Drummond Co., 552 F.3d 1303, 1319 (11th Cir. 2008); Sosa, 133 F.3d at 1419. Determining a party's diligence is a fact intensive analysis, and this Court has considered .... the fact that the information providing the basis for the proposed amendment was available to the party before the deadline, see id.; Sosa, 133 F.3d at 1419, as relevant to a party's diligence.
>
> Ultimately, a district court has significant discretion in setting and enforcing its scheduling orders. "[W]e have often held that a district court's decision to hold litigants to the clear terms of its scheduling orders is not an abuse of discretion." Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1307 (11th Cir. 2011) ("[T]hough the court had the authority to grant a post hoc extension of the discovery deadline for good cause, it was under no obligation to do so."); see also Bearint ex rel. Bearint v. Dorell Juv. Grp., Inc., 389 F.3d 1339, 1348–49 (11th Cir. 2004) (upholding a district court's decision to exclude an expert report disclosed after the deadline expired for submission).

See also generally Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1418 (11th Cir. 1998); 6A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE, § 1522.2 (3d ed. 2021) ("the Rule 16(b) standard controls any decisions to alter a scheduling order for purposes of making pleading amendments and it must be satisfied before determining whether an amendment should be permitted under Rule 15[]"). "'The purpose of limiting the period for amending the pleadings is

to assure that at some point both the parties and the pleadings will be fixed.' *O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152, 154 (1st Cir. 2004)." Acosta v. Holland Acquisitions, Inc., 2018 WL 2230895, *3 (W.D. Penn. May 16, 2018) (reviewing Fed.R.Civ.P. 16(b)(4) good cause in a DOL FLSA action and found the DOL had not carried its burden to modify the amendment deadline).

Presently, the DOL has failed to submit any "good cause" arguments to support amending "Appendix A" (Doc. 1-2 (154 employees)) with the employees referenced in "Exhibit 1" (Doc. 63-1 (82 employees)) and in the "Amended Appendix A" (Doc. 66-1 (82 employees) (which simply renames "Exhibit 1"). The most the Court can discern from the briefing is that the DOL states that its revised employee list "reflects ... additional violations occurring since August 25, 2019 it uncovered in Defendant's most recent records." The DOL began investigation AMS on December 17, 2017 and continued to do so after August 25, 2019 through December 29, 2019, and its case has been pending against AMS since August 25, 2021.  So citing August 25, 2019 provides no clarification, especially in light of the significant discovery which has been produced. And, the DOL fails to provide any date on which AMS provided the "most recent records" as well as fails to address or explain how those records led to the discovery of new plaintiff employees/claims set forth in the revised employee list showing 82 employees (Doc. 63-1 ("Exhibit 1") or Doc. 66-1 ("Exhibit 1" renamed as "Amended Appendix A")).  Moreover, the DOL has failed to explain or articulate support that its proposed amendment of new plaintiffs/claims is rooted in "good cause" stemming from this production or some later production -- *i.e*, that the DOL only discovered or first learned of these new plaintiffs (and their new claims) on/around July 22, 2022/early August 2022 or on/around November 22, 2022 (when it filed the revised employee list).[8]

---

[8] See, e.g., Lowe's Home Centers, Inc. v. Olin Corp., 313 F.3d 1307, 1314 (11th Cir. 2002) (affirming denial of motion to amend where plaintiff did not file its motion for leave to amend its first amended complaint until over two months after plaintiff was on notice of the apparent need to amend); (Continued)

Along these lines, the Court finds the rationale of <u>Chao v. Westside Drywall, Inc</u>., 709 F.Supp.2d 1037 (D. Or. 2010), instructive. In <u>Chao</u>, the federal court assessed the DOL's motion to amend its complaint with a supplemental "Exhibit A" employee list (adding plaintiff employees/claimants) after the discovery and amended pleadings deadlines both expired.  In so doing, the court highlighted the DOL's failure to establish diligence and good cause as well as the prejudice to the defendant employers if the amendment were allowed:

> The prejudice to Defendants of allowing the motion to amend is significantly greater that that suggested by the Secretary. The deadline for filing amended pleadings passed without the Secretary filing an amended complaint or a motion to extend the deadline. Defendants had no reason to anticipate that the Secretary was still searching for additional claimants, and therefore had no reason to note when claimants giving deposition testimony mentioned the names of others with whom they worked. Had Defendants been on notice that amendments were forthcoming, or even contemplated, Defendants would have had the opportunity and the motive to question each claimant closely about any other individuals they named during their deposition. However, once the deadline for filing amended pleadings passed without event, Defendants had no reason to, and by all accounts did not, pursue that line of questioning. Thus, if the Secretary's motions to amend are granted, Defendants will need to re-locate, re-subpoena, and re-depose the claimants who named the other individuals that the Secretary now seeks to add, precisely to ask those questions, adding a significant and entirely avoidable cost to this litigation. This is, of course, assuming that the deponents can in fact be located again, and that their memories have not faded in the year or more that has passed since their original deposition, two contingencies which are likely to be realized unfavorably to Defendants given the passage of time and the itinerant nature of these workers' employment. Therefore, the court concludes that clear and significant prejudice to Defendants would result by allowing the Secretary to amend her complaint at this stage of the case.

<u>Chao</u>, 709 F.Supp.2d at 1075.  For these reasons, the <u>Chao</u> court denied the DOL's amendment.

---

<u>EEOC v. Exel Inc.</u>, 259 F.R.D. 652, 655 (N.D. Ga. 2008) ("[T]he Court finds that an over two month delay between the time Baugh's deposition was taken and the motion to amend was filed does not show 'good cause[]'"); <u>Target Brands, Inc. v. Russell Petroleum Corp.</u>, 2008 WL 4701316, at *1 (M.D. Ala. Oct. 23, 2008) (denying motion to amend under Rule 16 because "Plaintiff had all the information they needed to amend the Complaint on June 25, 2008, but failed to seek leave to amend the Complaint until almost three months thereafter[]").

In sum, given the depths of AMS' production, the DOL could have moved to amend the April 25, 2022 deadline for amendments (Doc. 27) if additional plaintiff employees were anticipated to be uncovered, or had been uncovered. However, the DOL did not endeavor to amend the plaintiff employee list until November 22, 2022. And while the parties were given additional time to complete discovery -- until October 3, 2022 -- there is no indication that AMS produced additional records *after* July 22, 2022/early August 2022. Based on the information before the Court, the DOL has not demonstrated "good cause" in seeking a modification to the deadline for amended pleadings in the Court's Scheduling Order, such that the amendment to add the 37 employees who were neither listed in "Appendix A" (Doc. 1-2 (154 employees)) or the "Exhibit A" (Doc. 9-1 (115 employees)) is **DENIED.**   Thus, this case will proceed only as to the **45 employees**[9] listed in "Amended Appendix A" (Doc. 66-1), that were **also** listed in either the original "Appendix A" (Doc. 1-2) or "Exhibit A" (Doc. 9-1).

## III.   Summary Judgment Conclusions of Law

### A.   Standard of Review

Pursuant to the standard of review, "[]the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).   Rule 56(c) provides as follows:

*(c) Procedures*

---

[9] **These employees are Kevin Albritton, Jorge Alvarado, Pedro Arce, John Arena, Billy Boatright, Erick Cintron-Castro, Emilio Cordoba, Hiram Diaz, Kevin Do, Miguel Feyjoo-Cruz, Zachery Floyd, Bobby Foxworth, Joshua George, Eduardo G. Gomez, Prentis Lamotta Holloway, Colton Matthew Keane, William Martin Kibby, Maxwell King, Hien Duc Le, Khoi Duy Le, Luan Van le, Gerardo Martinez, Gerald R. McLean, Eric David Miller, Sr., Tuan Nguyen, John Olan-Martinez, Ederick A. Pina, Daniel A. Pope, Rafael Rivera-Calif, Brendon Rodgers, Efren Rodgriguez,, Santos A. Salazar-Calles, Andres Saucedo-San Roman, Timmie Spencer, Steven Kyle Stewart, Anthony Sumrall, Matthew Todd Therrell, Miguel Angel Torres, Lai V. Tran, Jacob Vegas, Danny Velaquez-Lugo, Eustacio Velaquez, Jeremy Phillip Wheeler, Timothy E. Williams, and Ruben Yerena.**

***(1) Supporting Factual Positions.*** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

**(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

**(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

***(2) Objection That a Fact Is Not Supported by Admissible Evidence.*** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

***(3) Materials Not Cited.*** The court need consider only the cited materials, but it may consider other materials in the record.

***(4) Affidavits or Declarations.*** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c).

The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "For factual issues to be considered genuine, they must have a real basis in the record." Mize v. Jefferson City Bd. of Ed., 93 F.3d 739, 742 (11th Cir. 1996). The nonmovant "must show specific facts to support that there is a genuine dispute." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmovant may not rely on the pleadings, but must demonstrate a genuine issue for trial through affidavits, depositions, interrogatory answers, and

admissions. <u>Celotex</u>, 477 U.S. 323-24. If the nonmovant fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment.  <u>Id.</u> at 323.  Regarding this burden, "the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  <u>Tipton v. Bergrohr GMBH-Siegen</u>, 965 F.2d 994, 998-999 (11th Cir. 1992).

**B.    <u>Discussion</u>**

At issue in the motion for partial summary judgment is DOL's allegation that the "per diem" amounts paid by AMS to certain employees should have been included in the employee's regular rate of compensation, and because those amounts were not included, the regular rate of compensation for each employee was understated causing their overtime compensation to be under-calculated. There is no dispute that AMS is an employer under FLSA and that the employees at issue are employees under the FLSA.

"Congress enacted the FLSA to guarantee regular or overtime compensation for all actual work or employment. *Dade County, Fla. v. Alvarez*, 124 F.3d 1380, 1384 (11th Cir. 1997)." <u>White v. Dixie</u>, 741 Fed. Appx. 649, 661 (11th Cir. 2018).   As the Eleventh Circuit summarized in <u>Santiago v. Sanders</u>, 2017 WL 11684722, *3 (11th Cir. Aug. 8, 2017) (citations omitted):

> ... the employee-plaintiff must shoulder the burden of proving that he did not receive proper compensation for work that he performed ... To make a prima facie showing, a plaintiff must demonstrate that (1) he was employed by the defendant; (2) the defendant was engaged in interstate commerce; (3) he worked more than 40 hours in a week; and (4) the defendant knew of the plaintiff's work and failed to pay him overtime wages for such hours. ...

Section 206(a)(1)(C) of the FLSA requires that employers pay their employees a minimum wage -- at least $7.25 hour (minimum wage) at present. Section 207(a)(1) of the FLSA prohibits employers from having employees work more than 40 hours/workweek "unless such employee

receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed[]" (overtime). "An employee's regular rate is 'the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed.'" Boyle v. City of Pell City, 866 F.3d 1280, 1286 (11th Cir. 2017). Section 207(e) provides that the "regular rate" of an employee is "deemed to include all remuneration for employment paid to, or on behalf of, the employee[]" subject to eight (8) types of excludable payments per Section 207(e)(1)-(8).

These excludable payments include per diem. 29 U.S.C. §§ 207(e)(2). Section 207(e)(2) addresses per diem and provides, in relevant part, that an employee's regular rate does not include per diem: "reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment[.]" "Although per diem can be excluded from an employee's regular rate ... the 'regular rate' of pay ... cannot be left to a declaration by the parties as to what is to be treated as the regular rate for an employee; it must be drawn from what happens under the employment contract.'" 29 C.F.R. § 778.108 (citing *Bay Ridge Operating Co.,* 334 U.S. at 465...)." Gagnon v. United Technisource, Inc., 607 F.3d 1036, 1041 (5th Cir. 2010). Further, as noted in Kneuss v. Advanced Clinical Employment Staffing, LLC, 564 F.Supp.3d 1150, 1154 (N.D. Ala. Sept. 29, 2021): "[t]he Supreme Court has held that nothing in the text of the FLSA indicates that courts should interpret the exclusions to the regular rate narrowly. Instead, courts should give the exclusions a 'fair reading.' *Encino Motorcars, LLC v. Navarro,* ...138 S. Ct. 1134, 1142... (2018)."

AMS moves for summary judgment as to 32 employees listed in Doc. 60-1, arguing that the "per diem" payments to those employees were reimbursements of travel expenses incurred

while traveling from their place of residence to a jobsite where they performed work for AMS for AMS' convenience.  However, since the Court has not allowed the DOL to add employees that were not listed in Doc. 1-2 or Doc. 9-1, it appears[10] that of the 32 employees, only 18 employees[11] are at issue at issue on summary judgment, *(i.e.*, plaintiff moved for summary judgment on 14 employees[12] that are not part of the 45 remaining plaintiff employees).

Per AMS, the travel expense reimbursements for the 32 employees were paid at rates less than or consistent with the Federal Travel Regulation System or IRS guidance, meaning that such reimbursements are *excluded* from the regular rate of compensation per 29 C.F.R. § 778.217. (Doc. 61 at 2). "We never pay higher[]" than the GSA rate, "but we do get pretty close[,]" and AMS sometimes pays lower.   (Doc. 63-2 (Dep. Vasko-Norton at 27-28)).[13] AMS' Vice-President Controller April Vasko-Norton (who oversees/coordinates the financial functions for AMS including payroll, payables, receivables, financial statements) testified that: 1) while AMS does not have any policies and procedures for per diem and bases per diem on distance she looks up

---

[10] The Court uses the term "appears" because the Court has made its best effort to compare the various lists to determine what plaintiffs remain in the case.

[11] **The 18 employees that are at issue on summary judgment are Pedro Arce, John Arena, Miguel Feyjoo-Cruz, Zachery Floyd, Colton Matthew Keane, Hien Duc Le, Khoi Duy Le, John Olan-Martinez, Ederick A. Pina, Daniel A. Pope, Santos A. Salazar-Calles, Steven Kyle Stewart, Matthew Todd Therrell, Miguel Angel Torres, Jacob Vegas, Danny Velaquez-Lugo, Timothy E. Williams, and Ruben Yerena.**

[12] The 14 employees that are not at issue on summary judgment are Dylan Baxter, Charles Bettner, Michael Crenton Born, Mark Broadus, Aris Ferreras, Jorge Gonzalez, Nelson Jimenez, Wilbert Jones, Edgar Maloon, Juan A. Mejia, Carlos Melendez, Kevin E. Mosley, John C. Necaise, and Juan Rodriguez.

[13] On AMS' payroll sheet, the per diem would be included in the listed "not-taxed" sum (which may also include reimbursement for items like a hammer for example).  (Doc. 63-2 (Dep. Vasko-Norton at 32-33)).  Any per diem paid to an employee is not factored into any overtime premium received in a workweek. (Id. (Dep. Vasko-Norton at 34)).  The addresses for employees listed in Column G, however, are not necessarily accurate or current because employees in this line of work move around a lot and often change addresses or request an address to be on file that is not a home address, and the system can only accept one (1) address at a time. (Id. at 35-39, 46-48)).

GSA rates if employees will be working in a certain location about 40-50 miles away (based on the distance between where an employee lives and where the job site is located) and is "guided" by GSA rates for the area where the job site is located; 2) Doc. 60-1 showing the 32 employees, employees' hours worked, rate of pay, wages, and assigned jobsites are "accurately state[d]" and shows that those employees "were paid a per diem for the workweeks listed therein in order to reimburse them for travel expenses from their homes to the jobsites. The IRS or GSA rate for expense reimbursement based on the location of each respective jobsite is also accurately reflected[.]" (Doc. 60-2 at 2 (Decltn. April Vasko-Norton); Doc. 63-2 at 14, 16-17, 20, 26-28 (Dep. Vasko-Norton)). Moreover, AMS argues that the Sullivan Declaration submitted by the DOL in response -- notably where it states that AMS "misclassified a portion of [its employees'] ... regular rate of pay as per diem" because the documents she reviewed "demonstrated that [AMS] ... had paid per diem expenses to at least 82 employees who lived fewer than 50 miles from the jobsites at which they worked[]" -- is conclusory and presents legal arguments instead of statements of fact. (Doc. 63-3 at 2 (Decltn. Sullivan)).

In response, the DOL argues that AMS has failed to show the absence of genuine issues of material fact as to whether the employees were being reimbursed for travel expenses when paid per diem, and that AMS' records ("representative sample") and the testimony of Controller Vasko-Norton indicate that it was common for employees to receive "purported" per diem payments even when they did not meet AMS' criteria for such reimbursement.  Specifically, per the DOL, AMS' characterization of the payments as travel reimbursements means that AMS misclassified those payments to (presumably) avoid overtime compensation as part of a wage misclassification scheme. The DOL focuses on Vasko-Norton's testimony that if an employee who lives less than 40-50 miles from a jobsite was paid per diem, it was by mistake, and that during the course of the

DOL investigation AMS discovered some instances where it made those mistakes.  (Doc. 63-2 at 22, 24 (Dep. Vasko-Norton at 22, 24)).  The DOL also characterizes Vasko-Norton's testimony regarding per diem as follows:

> .... Vasko-Norton testified that Defendant generally only pays per diem when one of its employees travels more than approximately 40-50 miles to a worksite ... [Doc. 63-2 (Dep. Vasko-Norton))] ... Yet WHD's review of Defendant's records revealed that Defendant had paid per diem to at least 82 employees, including more than half of the employees identified in Defendant's Exhibit A, in workweeks in which they had traveled less than 50 miles to the worksite .... [Doc. 63-3 (Decltn. Sullivan at ¶¶6-7))]. For instance, a copy of a representative sample [ ] of records Defendant provided that list home and worksite addresses for these employees that are less than 50 miles apart in some workweeks is attached is attached as ... [Doc. 63-4]. This fact alone undercuts Defendant's assertion that the employees identified in ... [Doc. 60-1] were properly paid per diem as reimbursement for travel expenses, as it reveals that Defendant paid many of those employees a per diem when they did not meet its own criteria for such payments.

> .... Vasko-Norton ... admitted in her deposition testimony that AMS improperly paid per diem to some employees who had traveled less than 40-50 miles to work. ... [Doc. 63-2 at 21-22 (Dep. Vasko-Norton))] ... Vasko-Norton did not attempt to justify these payments as legitimate, but instead admitted that those payments were "mistake[s]." Id. This is tantamount to an admission of the precise FLSA violations Plaintiff alleges in this case. However, neither Vasko-Norton nor Defendant has, to date, identified the full scope of the "mistakes" Defendant made by identifying each employee to whom Defendant improperly paid per diem. But WHD's review of the records Defendant provided indicated that at least the 82 individuals identified on ... [Doc. 63-1] were improperly paid per diem despite not traveling 50 miles to the jobsite and, by extension, not satisfying Defendant's own, single criteria for per diem eligibility... [Doc. 63-3 at ¶¶6-7 (Decltn. Sullivan)]... [Doc. 63-4] ... [Doc. 63-2 at 18 (Dep. Vasko-Norton)] .... At the very least, a genuine issue of material facts exists as to whether each of these individuals was one of Defendant's "mistakes" to whom it paid per diem in violation of the FLSA.

(Doc. 63 at 4-6 (footnote omitted)). From this, the DOL argues that AMS has failed to establish that the per diem payments to the listed employees were, in fact, reimbursements for travel expenses rather than misclassified overtime wages.

In an effort to meet its burden on summary judgment, the DOL argues that Doc. 63-4 is a "representative sample" of AMS' scheme because those records show some employees lived less

than 50 miles from jobsites in "some workweeks" but received per diem instead of overtime pay. The DOL argues that this supports the allegation that AMS' misclassified wages as per diem because it shows AMS violated its own internal policy of only paying per diem when one an employee travels more than 40-50 miles to a worksite. (Doc. 63 at 4-6 (citing the testimony of Vasko-Norton)).  The DOL's characterization of Vasko-Norton's testimony is entirely incorrect and contradicted by the evidence.  Despite the DOL's characterizations, there is no indication that this was an AMS "policy," formal or otherwise, or that the mileage measurement was AMS' "single criteria" for per diem eligibility.

Vasko-Norton testified "[w]*e don't have any policies and procedures for per diem[]*" (Doc. 63-2 at 16 (Dep. Vasko-Norton) (emphasis added)). Vasko-Norton testified that there is no mileage minimum to receive per diem, "[*w]e don't have a set area*. We usually just base it around 40 or 50 miles."  (Id. at 18 (Dep. Vasko-Norton) (emphasis added)).  "*We don't have a set distance, no.*" (Id. at 21 (Dep. Vasko-Norton (emphasis added)).  "We *can* use approximately 50 miles, 40 miles. *Usually*, it's around 40 to 50 miles ... *We don't have an official cutoff*."  (Id. at 21 (Dep. Vasko-Norton) (emphasis added)).  Per Vasko-Norton, the AMS Human Resources manager talks to the employees, and they know approximately where the employees live and where the employees are coming in from out of town, so they have some say, and the supervisors consider where the employee worked, where the job site is, and "I think *there's a lot of things that go into that*, how long the shift hours are[]" for example.  (Id. at 18 (Dep. Vasko-Norton) (emphasis added)). AMS considers GSA rates as well.  (Id. at 20 (Dep. Vasko-Norton)).  Thus, there is no AMS "internal policy" and there is no AMS "singular criteria" for paying per diem to its employees.

And even if there were, AMS's violation of any internal policy would be irrelevant to whether AMS violated the FLSA. The DOL has sued AMS for alleged violations of the FLSA

(failing to pay employees the proper overtime premium due to allegedly misclassifying employees' regular rate as per diem).  The FLSA does not limit an employer's payment of per diem to those employees who travel in excess of 40 miles.  The only stipulation for employer reimbursements is that such must reflect a reasonable estimation of expenses incurred for the convenience of the employer. 29 C.F.R. § 778.217(a) ("Payments made by the employer to cover [expenses incurred by an employee for the convenience of the employer] are not included in the employee's regular rate if the amount of the reimbursement reasonably approximates the expense incurred. Such payment is not compensation for services rendered by the employees during any hours worked in the workweek.") (internal parentheses omitted). Section 778.217 ... state[s]..."[a] reimbursement amount for an employee traveling on his or her employer's business is per se reasonable, and not disproportionately large, if it: (i) Is the same or less than the maximum reimbursement payment or per diem allowance permitted for the same type of expense under…the Federal Travel Regulation System or IRS guidance…" 29 C.F.R. § 778.217(c)(2)(i).  Section 207(e)(2) also provides that per diem is not limited to travel expenses but that, in relevant part, an employee's regular rate does not include per diem for ".... **other expenses**, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; **and other similar payments** to an employee which are not made as compensation for his hours of employment[.]" (emphasis added).

Further, the DOL's assertion that Vasko-Norton is "the only evidence" offered in support of AMS' motion (Doc. 63 at 4) is dramatically incorrect. AMS has submitted detailed records for the employees at issue which confirm what it states -- these AMS employees were paid per diem as travel reimbursements and their wages were not misclassified to avoid overtime.  Specifically, Doc. 60-1, submitted in support of its motion, is a detailed document, with 1 page per employee,

for specific pay periods.  On each page, clearly identified, are the employee's name, address, detailed payment information including the check date, work period end date, regular hours, rate of pay, regular pay, overtime hours, overtime pay, per diem for pay period, per diem rate, daily mileage, job site address, and total GSA rate.  Doc. 60-1 confirms that the 32 AMS employees were paid: 1) their fixed regular rate for 40 hours on each enumerated workweek; 2) overtime at a fixed rate of time and a half for the overtime hours each employee worked; and 3) per diem at a rate that is less than or equal to the GSA rate when the employee traveled for AMS's convenience. These records are also attested to as an accurate reflection of AMS' payroll records by Vice-President Controller April Vasko-Norton (Doc. 60-2 (Decltn. Vasko-Norton)).  As specifically explained by Vasko-Norton:

> ... all of the information stated in Exhibit "A" is an accurate reflection of AMS s payroll records. Exhibit "A" accurately states the hours worked, rate of pay, and wages paid for each employee listed ... The residence addresses of each employee listed in Exhibit "A" were reported to AMS and recorded as shown ... Exhibit  "A" is also an accurate representation of where each enumerated employee worked for AMS during the workweeks indicated .... Exhibit "A" is also an accurate representation of the distance traveled from each respective employee's reported home address to their assigned jobsite for the enumerated workweeks.
>
> The employees listed in Exhibit "A" were paid a per diem for the workweeks listed therein in order to reimburse them for travel expenses from their homes to the jobsites. The IRS or GSA rate for expense reimbursement  based on the location of each respective jobsite is also accurately reflected in Exhibit "A."

(Id.)

The DOL's Response fails to contest the accuracy of _any_ of the information contained in Doc. 60-1, or present _any_ argument or evidence as to how the employees listed therein had wages misclassified as per diem (other to allege that some lived closer than 40 miles to the jobsite).  The DOL has submitted nothing of substance to create a genuine issue of fact.

Finally, the DOL argues that "due to the complex nature of the calculations involved in this matter, a variety of the different types of documents .... must be cross-compared to determine, where each employee worked, where each employee lived, when they were paid per diem, and how much per diem that employee received, in order to determine when employees were improperly paid per diem." (Doc. 63 at 5 at note 1). The Court agrees. The DOL, however, has failed to do that in response to AMS' motion, thus failing to create a genuine issue of material fact. Instead, the DOL submitted 111 pages of documents (Doc. 63-4) for the Court to review and figure out on its own whether the DOL's allegations are supported.

And, apparently in an effort to convince the Court that there is evidence to support the DOL's allegations, the DOL submits the Declaration of WHD Investigator Luigi Sullivan (Sullivan). (Doc. 63-3 (Decltn. Sullivan)). Sullivan summarily assures the Court that "between August 25, 2019" and an unknown date AMS misclassified a portion of the regular rate of pay as per diem for at least 82 employees and failed to pay their full overtime premium. (Id.) Per Sullivan, this is because these employees lived fewer than 50 miles from the jobsites at which they worked, as "reflected in the representative sample of the type of records" [*i.e.* the attached 111 pages of disorganized and not readily apparent documentation] AMS provided "that lists home and worksite addresses[]" (Id. (referencing Doc. 63-4 at 1-111)). However, Sullivan simply summarily references the 111 pages of employee records (as "Exhibit 4") without any supported or detailed explanation or description of the information contained therein and/or without identifying even where the misclassified per diem is indicated on such records, where the addresses are indicated (home vs. jobsites), etc. and/or how such records support the conclusion asserted, etc. Essentially, Sullivan does nothing to connect "Exhibit 4" to her (or the DOL's) assertions. The Court will not unilaterally review 111 pages of handwritten notations and records to find support for the DOL's

contentions, generally and/or as applied to the employees at issue. And even if the court were inclined to do so, a "representative sample" of what evidence is expected is insufficient. The DOL has failed to create the existence of a genuine issue of material fact on summary judgment due to a complete evidentiary failure.

IV.   **Conclusion**

Upon consideration, it is **ORDERED** that:

1) AMS' partial motion for summary judgment as to undercalculated overtime compensation/wage misclassification (Docs. 60, 61) is **GRANTED** as to the 18 employees at issue: Pedro Arce, John Arena, Miguel Feyjoo-Cruz, Zachery Floyd, Colton Matthew Keane, Hien Duc Le, Khoi Duy Le, John Olan-Martinez, Ederick A. Pina, Daniel A. Pope, Santos A. Salazar-Calles, Steven Kyle Stewart, Matthew Todd Therrell, Miguel Angel Torres, Jacob Vegas, Danny Velaquez-Lugo, Timothy E. Williams, and Ruben Yerena; and

2) The DOL's Doc. 63-1 and Doc. 66-1 (amended employee lists) are **STRICKEN to the extent they include names of employees not listed in Doc. 1-2 or Doc. 9-1.**

**DONE** and **ORDERED** this the **1st** day of **February 2023**.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**